OPINION
{¶ 1} Defendant, Rodney Foust, appeals from his conviction and sentence for assault and unlawful restraint.
 {¶ 2} Rosalyn Murphy was the office manager for a mortgage closing business in Vandalia owned by Foust. Murphy and Defendant were also involved in a romantic relationship for several years. Murphy terminated that relationship on or about January 1, 2004. As a result, Defendant and Murphy discussed ending their employment relationship.
 {¶ 3} On January 16, 2004, Defendant came in to work and told Murphy that he didn't think she should continue working for him. Murphy agreed. After Murphy gathered her personal belongings and began to leave, Defendant grabbed Murphy's personal cell phone and refused to return it to her. Murphy's efforts to get her cell phone back resulted in a physical altercation with Defendant.
 {¶ 4} While trying to retrieve her cell phone, Murphy ripped Defendant's sweater. Defendant began pushing Murphy around, finally pinning her up against a fax machine, bruising her lower back. Defendant also grabbed Murphy by the arms and her clothing and pulled her along the floor to a back office, resulting in "rug burns" to Murphy's leg. In the back office, away from any windows, Defendant slung Murphy to the floor and sat on top of her while he examined the call log on her cell phone to learn what personal calls she had made.
 {¶ 5} After Defendant let Murphy up and returned her cell phone, she walked to her car to leave. Defendant followed her to the parking lot and tried to prevent Murphy from leaving. Defendant reached inside the car across Murphy and attempted to take her car keys from the ignition. When Murphy resisted, Defendant bit her on the hand. In return, Murphy bit Defendant on the arm. Defendant was able to take a child support check payable to Murphy from inside her car. Rather than following Defendant back inside th office to get the check, Murphy drove away and later called police. Photographs were taken of the rug burns on Murphy's leg and the bite marks on her hand. When police contacted Defendant by phone, he told them Murphy could not have her check back until she returned office equipment that was in her possession.
 {¶ 6} Defendant's version of the events is vastly different from Murphy's. He claims that he fired Murphy because of her poor job performance, and when he did, Murphy became angry and upset and attacked him. According to Defendant, Murphy came at him swinging and scratching, and he merely attempted to defend himself against further attack. Defendant denied pushing, striking, biting, or sitting on Murphy. He also denied dragging her to the back office or taking the child support check from her car. Defendant claims that the only items he removed from Murphy's car were keys to the office and the office appointment book. Defendant claims that he told Murphy she could stop by the office and pick up her personal belongings, which included a child support check, after he returned to the office from property closings.
 {¶ 7} Defendant was charged by complaint in Vandalia Municipal Court with one count of assault in violation of section 636.02 of the Vandalia Ordinances and one count of unlawful restraint in violation of section 636.07 of those ordinances. Following a trial to the court, Defendant was found guilty of both offenses. The trial court fined Defendant two hundred fifty dollars plus court costs, but suspended two hundred dollars of the fine. Execution of Defendant's sentence was stayed pending this appeal.
 {¶ 8} Defendant has timely appealed to this court from his conviction and sentence.
 {¶ 9} First assignment of error
 {¶ 10} "The trial court committed prejudicial error in unduly restricting appellant's right of cross-examination of the alleged victim and thereby deprived appellant of a fair trial, as is guaranteed by thesixth amendment to the united states constitution and article I, section10 of the ohio constitution."
 {¶ 11} Defendant argues that the trial court abused its discretion in not allowing him to cross-examine the alleged victim, Rosalynn Murphy, on matters relevant to her credibility. Specifically, Defendant wished to cross-examine Murphy regarding: (1) whether Murphy had misrepresented to school officials what school district her children live in, (2) whether Murphy had violated a noncompete agreement she signed during the course of her employment with Defendant, (3) whether Murphy had defrauded the federal government by misrepresenting that she was unemployed when she applied for food stamps, (4) whether any criminal charges were ever filed against Murphy for the injuries she caused Defendant during this altercation, and (5) whether on previous occasions when Murphy and Defendant argued, those incidents had involved any acts of violence and whether any charges were ever filed.
 {¶ 12} Although Defendant argued that he wanted to cross-examine Murphy about these matters in order to demonstrate her bias, prejudice, interest and motive to misrepresent, and thus impeach her credibility, the trial court refused to allow any inquiry into these matters, ruling that they were irrelevant to the issues in this case and did not test the credibility of anything Murphy testified to on direct examination.
 {¶ 13} The constitutional right of cross-examination includes the right to impeach a witness's credibility. State v. Green,66 Ohio St.3d 141, 1993-Ohio-26; State v. Brewer (August 24, 1994), Montgomery App. No. 13866; Evid.R. 611(B). Unlike Federal Crim.R. 611, which generally limits cross-examination to matters raised during direct, Ohio Crim.R. 611(B) permits cross-examination on all relevant issues and matters relating to credibility. Weissenberger, Ohio Evidence 2005 Courtroom Manual, at p. 245-246. Possible bias, prejudice, pecuniary interest in the litigation or motive to misrepresent facts, are matters that may affect credibility. Evid.R. 616(A); State v. Ferguson (1983),5 Ohio St. 3d 160. The denial of full and effective cross-examination of any witness who identifies Defendant and the perpetrator of the offense, is the denial of the fundamental constitutional right of confrontation essential to a fair trial. State v. Hannah (1978), 54 Ohio St.2d 84;Brewer, supra.
 {¶ 14} On the other hand, trial courts have wide latitude in imposing reasonable limits on the scope of cross-examination based upon concerns about harassment, prejudice, confusion of the issues, the witness's safety, or repetitive, marginally relevant interrogation. Delaware v. VanArsdall (1986), 475 U.S. 673, 106 S.Ct. 1431. It is within the trial court's broad discretion to determine whether testimony is relevant, and to balance its potential probative value against the danger of unfair prejudice. In re Fugate (2000), Darke App. No. 1512. We will not interfere with the trial court's decision in those matters absent an abuse of discretion. Id. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. Id.
 {¶ 15} This case presents a classic "he said, she said" credibility contest between the victim, Murphy, and Defendant. Murphy's testimony is the only evidence that identifies Defendant as the perpetrator of these crimes and demonstrates the elements of the offenses with which Defendant is charged. Thus, Murphy's credibility was a crucial issue in establishing Defendant's guilt. That said, however, we agree with the trial court that the issues about which Defendant wished to cross-examine Murphy had no relevance to whether on January 16, 2004, Defendant assaulted Murphy and unlawfully restrained her. Furthermore, such extraneous side issues would have injected into this case legitimate concerns over harassment of the victim and confusion of the issues vis-a-vis putting the victim on trial.
 {¶ 16} Whatever marginal probative value these extraneous areas of inquiry might have had in impeaching Murphy's credibility generally was far outweighed by the danger of unfair prejudice that could result from inquiry into those areas. Evid.R. 403(A). Under those circumstances, the limits the trial court placed upon the scope of cross-examination of the victim Murphy were entirely reasonable and not an abuse of discretion.
 {¶ 17} The trial court also excluded other evidence Defendant attempted to offer to impeach Murphy's credibility.
 {¶ 18} Defendant asked Murphy on cross-examination whether she had acted angrily on an earlier occasion when she entered Defendant's home to find him with another woman, Amanda Felts. Murphy denied the accusation. Subsequently, the court refused to allow Murphy to inquire of Amanda Felts about the incident. The ruling was correct. Specific instances of a witness's prior conduct, offered for the purpose of attacking the witness's character for truthfulness, other than conviction of a crime, may not be proved by extrinsic evidence, but only during cross-examination of the witness. Evid.R. 608(B). The proposed testimony of Amanda Felts concerning Murphy's reaction was such extrinsic evidence. Defendant was "stuck" with the answer Murphy gave on cross-examination.
 {¶ 19} Defendant also proffered testimony that Felts would have offered that Murphy, when she found Defendant and Felts together, threw a glass of wine in Defendant's face. That is evidence tending to show Murphy's bias or prejudice against Defendant. It was admissible per Evid.R. 616(A), "either by examination of the witness (Murphy) or by extrinsic evidence." Felts' testimony was such admissible extrinsic evidence. Therefore, the trial court erred when it excluded her testimony regarding the matter. However, in view of the other evidence the State offered, including evidence of the rug burns to Murphy's leg that clearly bespeak aggression on the part of Defendant, the error is harmless beyond a reasonable doubt.
 {¶ 20} The first assignment of error is overruled.
 {¶ 21} Second assignment of error
 {¶ 22} "Appellant's adjudication of guilt is contrary to law and to the due process clause of the fourteenth amendment to the constitution of the united states and article I, section 16 of the ohio constitution in that there was insufficient evidence adduced to establish each and every element of the offense beyond a reasonable doubt. appellant's conviction is accordingly against the manifest weight of the evidence."
 {¶ 23} Although this assignment of error refers to both sufficiency and weight of the evidence, Defendant's argument only implicates the weight of the evidence. Defendant points out that he and the victim Murphy presented conflicting versions of the altercation in question. The trial court did not expressly find that Defendant's testimony was not credible. Furthermore, Defendant claims that Murphy's version of the events is not consistent with the physical evidence, which implies that Murphy's testimony is not credible or worthy of belief. Thus, Defendant is arguing that the guilty verdicts are against the manifest weight of the evidence.
 {¶ 24} A weight of the evidence argument challenges the believability of the evidence, and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15562, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 25} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 26} The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 27} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 28} It is the State's burden at trial to prove the criminal charge or charges alleged beyond a reasonable doubt. However, when a convicted defendant argues on appeal that his conviction is against the manifest weight of the evidence, the defendant bears the burden of that proposition. He must show that his conviction is contrary to the weight of the evidence offered, not merely that the probative value of the evidence offered by both sides is in equipoise. In that circumstance, this court will not substitute its judgment for that of the trier of facts on issues such as witness credibility, unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley
(October 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 29} The trial court in this case, sitting as the trier of facts, did not lose its way simply because it chose to believe Murphy's version of the events rather than Defendant's, which it was entitled to do. In reviewing this record as a whole we cannot say that the evidence weighs heavily against a conviction, that the trier of facts lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 30} The second assignment of error is overruled. The judgment of the trial court will be affirmed.
Brogan, P.J. and Wolff, J., concur.