[Cite as *State v. Mills*, 2022-Ohio-969.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                      Court of Appeals No.  L-20-1084

      Appellee                              Trial Court No.  CR0201902158

v.

Miguel Lamont Mills                        **DECISION AND JUDGMENT**

      Appellant                              Decided:  March 25, 2022

* * * * *

Julie R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee.

Emil Gravelle, III, for appellant

* * * * *

**OSOWIK, J.**

{¶ 1} This is a delayed appeal of a January 27, 2020, judgment of the Lucas Court

of Common Pleas. Following a jury trial, appellant, Miguel Lamont Mills, was found

guilty of felonious assault, a violation of R.C. 2903.11(A)(2) and (D), with the attached

firearm specification in violation of R.C. 2941.145(A), (B), (C), and (F), and discharging a firearm on or near a prohibited premises, in violation of R.C. 2923.162(A)(3) and (C)(2). For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellant sets forth the following four assignments of error:

1.  The trial court erred when it failed to conduct a competency hearing before Mr. Mills' trial in violation of Mr. Mill's right to due process rights underneath [the] 14th Amendment to the United States Constitution, Section 16, Article I of the Ohio Constitution, and Section 2945.37 of the Ohio Revised Code.

2.  The trial court erred in denying Appellant Miguel Mills' *Batson* objection of an African American juror being removed from the jury.

3.  Appellant's Conviction was Based on Insufficient Evidence.

4.  Appellant's Conviction was Against the Manifest Weight of Evidence.

## I. Background

{¶ 3} The following undisputed facts are relevant to this appeal. On July 9, 2019, appellant was indicted by a Lucas County Grand Jury on one count of felonious assault, in violation of R.C. 2903.11(A)(2) and (D), a felony in the second degree, with firearm specifications in violation of R.C. 2941.145(A), (B), (C) and (F), and a second count of discharging a firearm on or near a prohibited premises, in violation of R.C.

2.

2923.162(A)(3) and (C)(2), a felony in the third degree. Appellee, state of Ohio, alleged that around noon on May 14, 2019, appellant ran out of a building near the intersection of Ontario and Walnut streets in Toledo, Lucas County, Ohio, where the victim was stopped at a stop sign in a white GMC SUV. As the vehicle moved on, appellant raised his arm, pointed a gun at the vehicle, and fired at least three shots, one of which struck the vehicle. Appellant entered a plea of not guilty, and the matter proceeded to trial.

{¶ 4} Prior to trial, on November 19, 2019, appellant filed a Motion for Competency and General Mental Health Assessment to determine his competence to understand the charges against him and to evaluate any plea offers presented. His attorney maintained that appellant's mental stability had "completely evaporated," and appellant could no longer have a reasonable conversation with his attorney about the evidence against him, review trial tactics, or review any plea offers. Further, his attorney maintained the last three visits with appellant resulted in appellant "becoming so verbally violent and physically telegraphing potential violence" and caused the intervention of corrections officers. Although the court's journal does not reflect the trial court's response to appellant's motion, the record contains, with no objection by appellant, correspondence dated December 3, 2019 from The Court Diagnostic and Treatment Center and addressed to the trial court stating the letter is in response to the trial court's November 21, 2019 referral for an evaluation of appellant of his competency to stand trial pursuant to R.C. 2945.371 and for a complete general psychological evaluation. The

3.

referral could not be performed as scheduled on December 3 because appellant refused to be transported from the jail to The Court Diagnostic and Treatment Center.

{¶ 5} On December 9, 2019, the trial commenced with jury selection. During voir dire, the prosecution used one of its four peremptory challenges to strike an African-American prospective juror who repeatedly expressed hesitancy towards rendering a judgment against a defendant, even if the evidence presented supported it. Appellant objected to that prospective juror's removal pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). After hearing arguments from the parties, the trial court decided to excuse that prospective juror with the following explanation:

> Court: Consistent with the answer [she] gave in the courtroom and then in chambers, she was struggling with her ability to make a decision based on her feelings of the weightiness of the decision and the impact it would have on individuals.
>
> All of which are race neutral concerns that she had. In fact, our record, as built, would not even begin to show other than our own placing on the record by the parties and the Court that she is, you know, an African American female.
>
> That being said, the reasons given by the State are race neutral. The concerns that [she] raised herself as far as her ability to render her service as a prospective juror not once gave any kind of indication that there was

any racial consideration being involved here, and the questions by the State, as well as Defense, would not have reflected any racial overtones or indications. The record is clear that this is a race neutral reason for the exercise of a peremptory challenge.

It is noted that the panel was drawn from the voter registration placed onto the Court by way of the Jury Commissioner's Office and the order of which the slips are received is all random, and then the way the jurors are called into the box is a random reading of the names that are on the slips handed to the Court's Criminal Bailiff without any knowledge of who they are until they're called.

The process of who was selected is totally random up to the point where they were called to the box. From that point forward other than the order in which they were called there was questioning of the jurors, but everything would establish it is a fair process and race neutral reason for exercise of the peremptory.

{¶ 6} The record shows that through additional voir dire of potential jurors, the resulting 12-person jury panel contained one African-American.

{¶ 7} During the two-day trial, the prosecution produced video evidence from multiple nearby apartment buildings and a Toledo police sky-cop camera that showed an African-American male chasing the victim's white GMC SUV. He is seen with his right

arm extended toward the vehicle. Flashes are seen emanating from his extended hand. Multiple witnesses identified the man in the video as the appellant. Witnesses heard gunshots. Police at the scene observed a bullet hole in the victim's vehicle. The victim did not allow authorities to inspect his vehicle because he did not want to pay for the repairs after the passenger-side door was taken apart by the police. The victim also did not appear for the trial, but the victim was interviewed at the scene and by a police detective.

{¶ 8} On December 10, 2019, the jury found appellant guilty of both counts and of the firearms specifications.

{¶ 9} On January 27, 2020, the trial court sentenced appellant on count one to a minimum of 5 years to a maximum of 7 and one-half years in prison. An additional term for the firearm specification of 3 years was imposed as a mandatory and consecutive term pursuant to R.C. 2929.14(C)(1)(a). On count two, the court imposed a term of imprisonment of 36 months to run concurrently to count one and concurrently to the 14-month reserve prison term ordered in Lucas County Court of Common Pleas case No. CR2019-01347.

{¶ 10} On June 18, 2020, this court granted appellant's motion to file a delayed appeal.

6.

## II. Competency

{¶ 11} In his first assignment of error, appellant asserts that the trial court erred when it failed to conduct a competency hearing before trial. We do not concur.

{¶ 12} Appellant argues that because he filed a Motion for Competency Examination before trial began, the court was required to hold a competency hearing before trial. The prosecution never responded to his motion. However, appellant was expediently referred to Court Diagnostic for a competency examination after the motion was filed.

{¶ 13} R.C. 2945.37(B) sets forth the procedure to be followed once an issue of competency has been raised before trial. It states, "In a criminal action in a court of common pleas, * * * the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section."

{¶ 14} The Ohio Supreme Court has held, "there is no question that where the issue of the defendant's competency to stand trial is raised prior to the trial, a competency hearing is mandatory." *State v. Bock*, 28 Ohio St.3d 108, 109, 502 N.E.2d 1016 (1986).

{¶ 15} The underlying issue presented to the court in *Bock* is similar to the case before us today. More specifically, in *Bock*, defense counsel claimed that the defendant was in an intensive care unit after suffering an overdose of pills or drugs and requested a R.C. 2945.37 hearing on his competency to stand trial. *Id*. at 108. The trial court ordered

7.

an examination of the defendant but no report was filed, no hearing held, no court finding made, nor any formal waiver of any kind filed by the defendant or his counsel. *Id.* Nevertheless, after a review of the record, the court in *Bock* found that "the record reveals no adequate indication of any behavior on the part of the defendant which might indicate incompetency." *Id.* at 111.

{¶ 16} "A defendant is presumed to be competent to stand trial." R.C. 2945.37(G). To overcome the presumption, legal incompetence comprises the defendant's capabilities of understanding the nature and objective of the proceedings and of assisting in the defendant's defense. R.C. 2945.37(G). "[T]he term 'mental illness' does not necessarily equate with the definition of legal incompetency." *State v. Berry*, 72 Ohio St.3d 354, 362, 650 N.E.2d 433 (1995). "Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *Bock* at 110.

{¶ 17} In the record before us, on November 12, 2019, the trial court's journalized entry set the trial date for December 9, 2019. At the November 4 hearing, appellant had repeatedly expressed his agitation with delaying the trial and with his perception of a violation of his speedy trial rights. Thereafter, the trial court responded to appellant's November 19 motion for a competency evaluation by making a referral for that evaluation on November 21. R.C. 2945.371(A). There is no indication that appellant did

8.

not know his trial date was on December 9 at the time of his November 19 motion or at the time he refused his competency evaluation on December 3. Appellant had a duty to cooperate with the competency evaluation he requested. R.C. 2945.371(C)(1). Appellant had a further duty to cooperate with the transportation from his place of custody to the place of the competency evaluation. R.C. 2945.371(D)(2). Appellant violated these duties. After appellant intentionally thwarted his scheduled competency evaluation on December 3, and then failed to argue for or give any indication of incompetency between December 3 and the start of trial, the trial court commenced his trial on December 9.

{¶ 18} Nevertheless, appellant argues that the trial court's November 21 referral "suggests that the trial court had an indicium of incompetency of the Appellant." Appellant further argues that the history of his interactions with the court supports his claim of incompetence.

{¶ 19} Specifically, appellant argues that on July 31, 2019, at his initial appearance in this case that was preceded by sentencing on another case to which he pled guilty, he told the trial court, "[I feel] Like I've been bamboozled. Even signing the waiver to come across with the other case. [My attorney] told me things, and everything she told me is not even happening. So you know what I'm saying? I'm really lost, really, you know what I mean? I feel like I have been railroaded." However, we find the foregoing statement was made in response to the following question by trial court wholly separate from appellant's competency to stand trial in this matter: "Mr. Mills, as it

9.

relates to the charge where you have pled, and that is the possession of a controlled substance, the felony of the fourth degree, anything you would like to say by way of sentencing?" Despite pertaining to a different case, appellant's statement shows that on that date was able to understand and respond to the question posed by the trial court.

{¶ 20} Appellant also cites to another exchange that occurred during the November 4, 2019 hearing. The original trial date was set for October 21, but rescheduled for November 4 at appellant's request. On November 4 the trial court explained that it was required to start a trial for homicide case that day, which took precedence over all other pending cases, including appellant's, seeking to proceed to trial that day.

> Defendant: They are violating my rights.
>
> Court: Sir, you can say that too. Give me a moment, please.
>
> (Whereupon, a discussion was held at the Bench.)
>
> Defendant: There is (sic.) a whole lot of things going on in this Court.
>
> (Whereupon, a discussion was held at the Bench.)
>
> Defendant: Well over my 90 days in custody. Well over my 90 days.
>
> (Whereupon, a discussion was held off the record.)

10.

Defendant: Modern day slavery man. That's all this is. Guilty till proven innocent instead of innocent until proven guilty.

{¶ 21} Also, during this same hearing, appellant points to his response to the trial court and the attorneys for both parties confirming that appellant made the prior request for a new trial date:

Defendant: You up until—[my attorney] assured me November 4th it (sic.) was nothing in the way. Then he came to see me Friday, and he -- and he-- and he made --he shouted out there is a possibility -- which I was guaranteed. I was ready for trial. It's like I'm sitting in here. I am innocent for what I am in here for. The system, say innocent until proven guilty. I feel like I'm guilty until proven innocent.

{¶ 22} The foregoing exchange with the trial court, again, shows appellant was agitated, not incompetent. The record confirms appellant's statements were made in response to the trial court's explanation that while appellant was "over the 90 days of in custody," he was "not over the 90 days on the speedy trial calculation."

{¶ 23} Finally, appellant referred to a statement he made on December 9 in the judge's chambers and outside of the jury's hearing that the voir dire process of peremptory challenges was "racist." The trial court's extensive explanation of its race-neutral findings for the removal of juror No. 4 leads us, again, to find that appellant was agitated, not incompetent.

11.

{¶ 24} Appellant relies on his in- and out-of-court behavior and statements as cumulative evidence of his "obvious" incompetency. However, given the definition of incompetency as set forth in *Bock,* appellant's behavior, while aggressive, hostile, and disruptive, are not sufficient indicia of mental incompetency. Nothing in the record establishes that appellant was incapable of understanding the nature and objective of the proceedings against him or of assisting in his defense. R.C. 2945.37(G).

{¶ 25} In fact, despite appellant's claims of apparent incompetence, he was extremely lucid and astutely recalled what occurred during his past courtroom appearances. After appellant made the foregoing statements to the trial court on November 4, 2019, he then said, "But I read my rights to speedy trial rights, and the formalities to speedy trial. They say there is no more than 120 days. Instead you keep pushing my date back." This statement clearly establishes that appellant was quite capable of assisting in his own defense, but for his own selectively-timed and deliberate misbehavior. At the conclusion of appellant's lengthy arguments in favor of his interpretation of his speedy trial rights, the trial court gave a lengthy response and ended with, "You are welcome to have an appeal on that issue. I need to call my next case because I need to get to trial on the case that is going to trial today. I appreciate you are upset. I am giving you as much deference as I can, but I have to move to the next case. Thank you." The record shows appellant was upset, not incompetent.

12.

{¶ 26} Like counsel in *Bock*, appellant's attorney in this case, after filing the original motion for a hearing, failed ever again to mention appellant's competency until set forth in an assignment of error in this appeal.

{¶ 27} Without sufficient indicia of incompetency appearing in the record, and where the record contains evidence of appellant's capability of understanding the charges against him and of assisting his counsel, we conclude that the failure of the trial court to hold a mandatory competency hearing was harmless error and did not interfere with his right to a fair trial. *See State v. Lawson*, 165 Ohio St.3d 445, 2021-Ohio-3566, 179 N.E.3d 1216, ¶ 67, citing *Bock*, 28 Ohio St.3d at 110, 502 N.E.2d 1016.

{¶ 28} We find that appellant's first assignment of error is not well-taken.

### III. *Batson* Challenge to Juror Removal

{¶ 29} In his second assignment of error, appellant asserts that the trial court erred when it denied his objection, pursuant to *Batson*, to the removal through a peremptory challenge of juror No. 4, who was the only African-American prospective juror at that time. Appellant argued the prosecution's race-neutral reason for exercising a peremptory challenge to remove juror No. 4 – her equivocation and hesitation of whether she could be an appropriate juror for either side –was a pretext for racial discrimination because "every juror's conscience will affect the outcome of trial."

{¶ 30} Appellant concedes that initially the prosecution attempted to remove juror No. 4 for cause because "she was unable to be certain that she could follow instructions

13.

and have the issue with judgment." Crim.R. 24(B) allows the court and the parties to examine prospective jurors "prior to any challenges for cause or peremptory challenges." When the prosecution asked during voir dire in the courtroom if any prospective juror had a problem "sitting in judgment of others * * * not * * * to judge a person * * * [but] to judge the facts and the evidence presented to you," juror No. 4 signaled that she did: "I'm sorry. I don't know about that. I don't feel comfortable with the judgment thing. I don't. * * * I don't know how I feel about that. I don't feel comfortable."

{¶ 31} The defendant, defense counsel, the prosecution, and the judge then left the courtroom for the judge's chambers to address juror issues. Upon the trial court's invitation, both parties declined to bring juror No. 4 into chambers for further voir dire examination. At that time, two potential jurors were African American, one of whom was juror No. 4. Defense counsel expressed a concern to the trial court if the jury panel "dropped below that." The trial court responded "[t]hat would depend on how the parties use their challenges whether for cause or peremptory, and whether or not any strike[,] of what presumably could be a request to strike an African American juror[,] what the foundation and the basis would be for the striking of that juror."

{¶ 32} The prosecution then challenged juror No. 4 for cause "indicating that she questions as to whether she would be able to make judgments." The prosecution further explained, "Our recollection of her responses was that even when pressed with a question, you are not judging the person, you are judging the evidence, she continued to

14.

equivocate and not be definitive in her response as to whether she would follow the rules requiring a guilty verdict if the facts are presented in a way that proved the case beyond a reasonable doubt." The prosecution concluded, "For that reason, because she was unable to be certain that she could follow instructions and have that issue with judgment, we would ask she be removed for cause."

{¶ 33} The defense argued that juror No. 4 was able to articulate that she could "render judgment based upon the facts. So I would ask that she remain."

{¶ 34} The trial court then brought juror No. 4 into chambers to further explore her hesitancy to serve as a juror.

> Court: The way that I want to ask about it is in this case the State will present what they believe the facts and evidence is in this case. The Defense will have an opportunity to challenge and question about that as well as present, if they would like, other facts in evidence to help you with the case, and then you would be sent back as a juror after receiving the Court's instructions, arguments by the parties, to make a decision. That is what I set up. You will go make a decision.
>
> How do you feel in this situation now that you have had time to hear further questions and think about it? Can you go back in a jury room and work with 11 other jurors and make a decision based upon the facts and evidence presented to you in the courtroom?

15.

Juror: I can.  I don't feel comfortable, because I just feel like it is still going to affect that person.  I mean I feel like I'm judging.  I can do that, but ultimately it is going to be my conscience that regardless of what my answer is and everybody else's, if that person is, you know, guilty or not. * * * It just bothers me.  I'm not comfortable with it.  I feel like it is some type of judgment.  Even though I can judge on the facts it is still going to affect the outcome.

* * *

Prosecution: Do you feel that that weight on your conscience, are you absolutely certain that that won't impact your deliberation and your verdict?  Can you say definitively you're going to * * * render a verdict solely based on the evidence and not [on] any of the stuff you talked about with that sort of weight on your conscience?

Juror: I think it will. I mean, I know it would be difficult, but I think it will. Like I said, I'm not comfortable with it. It would still bother me.

Prosecutor: Okay.

Juror: So it would still bother me.

Prosecutor: You are saying you are uncertain.

Juror: It will be fair, but I'm like -- I guess what you are saying I could be fair, but it's still -- like I said with the outcome – depending on the

outcome regardless of how I feel about my feelings on the facts that are presented to me, it still -- I feel like it is still part of the outcome and still would bother me.

Prosecutor: Sure. I think my final question is if you were the attorney for [appellant] or attorney for the State of Ohio would you feel comfortable with you as a juror? Knowing how you may react and respond with that conscience and –

Juror: I – I – would I feel comfortable with – I don't – I don't know. I mean they are entitled – I mean it just depends how they – how they personally take it, how it would affect them after the fact. So I'm going to say I don't know. I mean I wouldn't be mad if they feel that way, because they are entitled to their opinion if that's how they feel, and it is something that weighs on them, no. But if it is the way they feel and it is their opinion.

{¶ 35} After juror No. 4 left chambers, the prosecution renewed its challenge for cause, to which defendant objected. The trial court immediately denied the challenge for cause. The parties then continued their for-cause challenges pursuant to Crim.R. 24(C). At the conclusion of the for-cause challenges, they then proceeded with peremptory challenges of up to four prospective jurors each pursuant to Crim.R. 24(D). The prosecution exercised its first peremptory challenge to remove juror No. 4. The defense

17.

objected, "I would just ask my objection be on the record as to the Batson criteria, Your Honor." The trial court then heard arguments from the parties.

{¶ 36} The prosecution argued that juror No. 4 consistently showed "equivocation with respect to whether in her mind her conscience will [affect] the outcome. * * * I think I asked will it affect the outcome, and there was a great deal of hesitation and concern, and unable to, I believe, say whether she would find herself to be an appropriate juror for either side, so that would be the * * * race neutral reasons for using the peremptory on [her]."

{¶ 37} In response, the defense argued that juror No. 4's answers during voir dire show her "to be one of the more honest jurors in that when she spoke freely of her issues concerning how difficult [it] is to be a juror and to render judgment, she, as it stands now, is the only African American on the jury pool. And with [potential juror No. 12] as basically the last individual it would be eliminating the one African American on the jury pool, and I would just note my objection to her being removed."

{¶ 38} During the process in chambers where the parties alternately exercised their peremptory challenges of jurors, including juror No. 4 and seven other jurors, each was excused by the trial court pursuant to Crim.R. 24(E). During the discussion of the peremptory challenge of juror No. 4, appellant is recorded as stating, "This is racist." To complete the jury selection process, additional prospective jurors were thereafter

18.

summoned for voir dire. When the jury was eventually empaneled, one juror, juror No. 12, was an African-American.

{¶ 39} There is a three-part process to determine whether a prosecutor has used peremptory challenges in a way that violates the Equal Protection Clause. *Miller-El v. Cockrell*, 537 U.S. 322, 328, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. *Id.*, citing *Batson*, 476 U.S. at 96-97, 106 S.Ct. 1712, 90 L.Ed.2d 69. Second, if the defendant made that showing, the prosecutor must then show that the choice to strike the juror had a race-neutral basis. *Id.,* citing *Batson* at 97-98. Third, the court must determine whether the defendant has proved purposeful discrimination from the foregoing showings. *Id.,* citing *Batson* at 98.

{¶ 40} In reaching its determination, the trial court must consider the circumstances of the challenge and assess the plausibility of the prosecutor's explanation for discriminatory pretext. *State v. Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, 45 N.E.3d 208, ¶ 21, citing *Cockrell* at 339 and *State v. Frazier,* 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 65. Although the record shows that both appellant and juror No. 4 are African American, racial identity between the defendant and the excused juror is irrelevant to a defendant's standing to claim a discriminatory use of peremptory challenges. *Powers v. Ohio*, 499 U.S. 400, 416, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

19.

**{¶ 41}** Appellant points to juror No. 4's undisputed race as African American as satisfying the first part of a *Batson* challenge. The prosecution then points to the race-neutral reasons stated on the record. We find the trial court then provided extensive analysis for its determination that the peremptory challenge of juror No. 4 was for race-neutral reasons and that defendant failed to prove purposeful discrimination. "We defer to a trial court's resolution of a *Batson* challenge absent a showing of clear error." *Johnson* at ¶ 23, citing *State v. Thompson,* 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 53.

**{¶ 42}** We reviewed the record and do not find the trial court's decision to deny appellant's objection to the peremptory challenge of juror No. 4 was clearly erroneous. *State v. Williams*, 6th Dist. Lucas No. L-17-1186, 2019-Ohio-2657, ¶ 28. Accordingly, we find that appellant has not demonstrated that the trial court erred in denying a *Batson* objection for the removal of an African-American prospective juror.

**{¶ 43}** We find appellant's second assignment of error not well-taken and it is denied.

### IV. Sufficiency of Evidence

**{¶ 44}** In his third assignment of error, appellant asserts that his convictions were based on insufficient evidence. Appellant argues the only "reliable" evidence in this case "is that there were shots fired and the Defendant ran after the white SUV." Appellant further argues such evidence is insufficient proof "beyond a reasonable doubt that the

20.

Defendant had a firearm or deadly weapon and in fact used any such weapon on May 14, 2019."

**{¶ 45}** "The test for sufficiency of the evidence is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Worley*, 164 Ohio St.3d 589, 2021-Ohio-2207, ¶ 57, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses, as the legal concept of sufficiency of evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 386-87, 678 N.E.2d 541 (1997).

**{¶ 46}** First, to sustain appellant's conviction for count one, felonious assault, the jury must believe beyond a reasonable doubt that the prosecution proved that appellant did knowingly on May 14, 2019, in Lucas County, Ohio, "cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordinance." R.C. 2903.11(A)(2). Felonious assault is a second-degree felony. R.C. 2903.11(D)(1)(a).

**{¶ 47}** Next, to maintain a conviction with the firearm specifications, the jury must believe beyond a reasonable doubt that the prosecution proved appellant "had a firearm

21.

on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.145(A). A "firearm" has the same meaning as in R.C. 2923.11. R.C. 2941.145(F). The firearm specification carries a mandatory three-year prison term that is precluded in specific circumstances. R.C. 2941.145(A) and (B).

{¶ 48} Last, to uphold a conviction for count two, discharging a firearm on or near a prohibited premises, the jury must believe beyond a reasonable doubt that the prosecution proved that appellant "discharge[d] a firearm upon or over a public road or highway." R.C. 2923.162(A)(3). If the discharge "created a substantial risk of physical harm to any person or caused serious harm to property," then the violation is a third-degree felony. R.C. 2923.162(C)(2).

{¶ 49} The prosecution produced sufficient evidence at trial that could convince a reasonable jury beyond a reasonable doubt of all of the elements of the foregoing offenses. The prosecution produced multiple angles of video footage of an assailant with a firearm running on a street and chasing the victim's white GMC SUV, also on the same street. A Toledo police officer identified appellant as the person in the video because he saw appellant wearing the same attire of dark pants, dark sweatshirt, with a red Polo emblem, 20 to 30 minutes prior to the incident. Another witness testified she knew appellant and was certain she had seen appellant near the scene. Multiple witnesses saw

22.

appellant extend his arm firing towards the victim's vehicle and heard the gunshots emanating from him. The videos showed sparks emitting from the assailant's hand. Police arriving at the scene found a bullet hole on the passenger's side of the victim's vehicle.

{¶ 50} Appellant argues that since the videos do not show the assailant carrying a gun or displaying a firearm, he cannot be found guilty of the offenses. We disagree. The jury could conclude beyond a reasonable doubt that the man in the video wearing distinctive clothing firing a gun, which caused gunshot sounds and visual sparks, and associated still photographs, is appellant, rather than allegedly pointing an empty hand towards the victim's vehicle. A jury could reasonably conclude that appellant acted knowingly because he is seen chasing the victim's vehicle and firing towards it while both are on a public street, rather than allegedly running away from shots fired from the vehicle at appellant. A jury could reasonably conclude that the bullet hole on the passenger-side door of the victim's vehicle came from appellant's weapon, rather than allegedly caused by the victim's own shots fired from his vehicle or, alternatively, from some unidentified, other person. A jury could reasonably conclude that appellant likely knew his actions while on the street could cause serious harm, rather than allegedly initiated by the victim while paused at the stop sign before appellant came out to the street. A jury could reasonably conclude that a firearm was under appellant's control while he was committing the underlying offenses.

23.

{¶ 51} After viewing the evidence in a light most favorable to the prosecution, we find that there was sufficient evidence produced at trial, that any rational trier of fact could have found the essential elements of the offenses proven beyond a reasonable doubt. For the foregoing reasons, we find this assignment of error not well-taken and denied.

## V. Manifest Weight of the Evidence

{¶ 52} In his fourth assignment of error, appellant asserts that his convictions were against the manifest weight of the evidence. Appellant adopts the same arguments that he raised in his third assignment of error concerning the sufficiency of evidence. Appellant contends that the state failed to present any evidence that he had a firearm or deadly weapon or used any firearm or weapon at the time of the offense.

{¶ 53} When reviewing a manifest weight claim, we sit as a "thirteenth juror." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. That is, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Id.* Our role is to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.,* quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.,* quoting *Martin* at 175. This court "will not

24.

substitute its judgment for that of the trier of facts on issues such as witness credibility, unless it is patently apparent that the trier of facts lost its way in arriving at its verdict." *State v. Brown*, 6th Dist. Lucas No. L-20-1052, 2021-Ohio-1674, ¶ 57, quoting *State v. Foust*, 2d Dist. Montgomery No. Civ.A. 20470, 2005-Ohio-440, ¶ 28.

{¶ 54} We are not convinced this case is one of those situations. The jury considered the testimony and video evidence of the assailant identified by witnesses as appellant. That person is seen chasing the victim's vehicle with his arm extended and flashes emitting from the end of his hand, where a gun would be located. As noted, there were other witnesses that identified appellant at the scene and saw him shoot at the vehicle.

{¶ 55} Upon consideration, we find the jury chose to believe the testimony of the eyewitnesses as well as the videos. On review of that decision, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that appellant's convictions must be reversed. Accordingly, appellant's convictions are not against the manifest weight of the evidence, and we find this assignment of error not well-taken and is denied.

## VI. Conclusion

{¶ 56} We affirm the judgment of the Lucas County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

25.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.

Myron C. Duhart, P.J.

_____
JUDGE


_____
JUDGE


Gene A. Zmuda, J.
CONCURS IN JUDGMENT
ONLY.

_____
JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.