[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Mills*, Slip Opinion No. 2023-Ohio-4716.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-4716

THE STATE OF OHIO, APPELLEE, *v.* MILLS, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Mills*, Slip Opinion No. 2023-Ohio-4716.]**

*Criminal law—R.C. 2945.37(G)—Competency of the accused—A trial court's error in failing to hold a mandatory competency hearing is harmless when the record, taken as a whole, fails to demonstrate sufficient indicia of incompetency—Court of appeals' judgment affirmed.*

(No. 2022-0779—Submitted April 5, 2023—Decided December 28, 2023.)

APPEAL from the Court of Appeals for Lucas County,

No. L-20-1084, 2022-Ohio-969.

_____

**DEWINE, J., announcing the judgment of the court.**

{¶ 1} This is an appeal of criminal convictions. In the trial court, the defendant's attorney asked for an assessment of the defendant's competency to stand trial. But after a competency evaluation was scheduled, the defendant refused to be transported to the treatment center where the examination was to take place.

The matter proceeded to trial without a competency hearing and the defendant was convicted.

{¶ 2} The Sixth District Court of Appeals concluded that the trial court had erred by not holding a competency hearing. 2022-Ohio-969, ¶ 27. But it held that the error was harmless because the record failed to reveal sufficient indicia of incompetency. *Id.*

{¶ 3} The defendant asks that we revisit our prior precedent on the harmless-error standard for trial-court errors involving the failure to hold a mandatory competency hearing. We decline to do so. We reaffirm our traditional standard that a trial court's failure to hold a mandatory competency hearing is harmless when the record, taken as a whole, fails to reveal sufficient indicia of incompetency. Applying this standard, we affirm the decision of the court of appeals.

## I. A Trial, a Conviction, and an Appeal

{¶ 4} In July 2019, Miguel Mills was charged with two felonies for firing a gun at a car that was stopped at an intersection. A trial date was initially set for October 2019, but it was continued once so that Mills could consider a plea offer by the state and a second time so that the trial court could accommodate other cases on its docket. To Mills's frustration, his trial did not begin until December 2019.

{¶ 5} A couple weeks after the trial was continued the second time, Mills's attorney filed a "motion for competency and general mental health assessment." In support of this request, Mills's attorney said that Mills's mental stability since being detained was in a "downward spiral," rendering counsel unable to have a coherent conversation with Mills regarding the evidence against him, trial tactics, or the state's plea offer. The attorney also said that during three previous meetings, corrections officers had to be called to the meeting room because of Mills becoming "verbally violent and physically telegraphing potential violence." This behavior occurred, the attorney explained, whenever he was not "in complete agreement with

[Mills's] predetermined position * * * on even the smallest issues concerning the proceeding in court or his defense."

{¶ 6} In response to the motion, the trial court referred Mills for a general psychological evaluation. But when the time came for Mills to be transported to the treatment center for the examination, he refused to go. The evaluation was never rescheduled. Mills's attorney did not raise the matter further and the case proceeded to trial. A jury ultimately found Mills guilty of both felonies, and the trial court imposed a prison sentence.

{¶ 7} Mills appealed to the Sixth District. He argued, among other things, that the trial court committed reversible error by failing to hold a competency hearing. *See* 2022-Ohio-969 at ¶ 2. The Sixth District overruled that assignment of error and affirmed Mills's convictions. *Id.* at ¶ 27-28, 56. It noted that R.C. 2945.37(B) requires a competency hearing when the issue of the defendant's competency is raised prior to trial, but it held that the trial court's failure to conduct such a hearing was harmless error. 2022-Ohio-969 at ¶ 13-14, 27-28. Applying the standard that this court announced in *State v. Bock*, 28 Ohio St.3d 108, 502 N.E.2d 1016 (1986), the court of appeals explained that a trial court's failure to hold a mandatory competency hearing is harmless error when the record fails to reveal "sufficient indicia of incompetency." 2022-Ohio-969 at ¶ 27. It determined that Mills's behavior, "while aggressive, hostile, and disruptive, [was] not sufficient indicia of mental incompetency." *Id.* at ¶ 24. The court further explained that "the record contains evidence of [Mills's] capability of understanding the charges against him and of assisting his counsel." *Id.* at ¶ 27.

{¶ 8} Mills appealed, and we accepted jurisdiction over two propositions of law. *See* 167 Ohio St.3d 1482, 2022-Ohio-2765, 192 N.E.3d 510. In the first, Mills asserts that "[a]n appellate court considering whether a record on appeal contains 'sufficient indicia of incompetence' to trigger a constitutional competency hearing must review that record only for reasonable doubt * * * of the appellant's

incompetence in [the] lower-court proceedings." His second proposition posits: "A defendant cannot waive the issue of competency on a silent record."

## II. The Trial Court's Failure to Hold a Competency Hearing Was Harmless Error

{¶ 9} Mills presents this appeal as a legal challenge to the harmless-error standard applied by the court of appeals. He asks us to create a standard that would require an appellate court to examine the record for "reasonable doubt * * * of the [defendant's] incompetence in lower-court proceedings." We decline to do so and instead adhere to our precedent. Applying that precedent, we find no error in the court of appeals' determination that the trial court's error in failing to hold a competency hearing was harmless.

### A. We Adhere to the Sufficient-Indicia-of-Incompetency Standard

{¶ 10} The United States Supreme Court has held that the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires procedures adequate to "protect a defendant's right not to be tried or convicted while incompetent to stand trial." *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). Ohio has enacted a statute, R.C. 2945.37, that details procedures to protect this right.

{¶ 11} A defendant is incompetent when he "is incapable of understanding the nature and objective of the proceedings against [him] or of assisting in [his] defense." R.C. 2945.37(G); *see also Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) ("[T]he test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him").

{¶ 12} "[T]he court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial." R.C. 2945.37(B). "If the issue is raised before the trial has commenced, the court *shall* hold a hearing on the issue."

(Emphasis added.) *Id.* "A defendant is presumed to be competent to stand trial." R.C. 2945.37(G). To rebut this presumption, the defendant's incompetency to stand trial must be established at the hearing by a preponderance of the evidence. *Id.*

{¶ 13} By requesting a competency examination, Mills's counsel raised the issue of Mills's competency. Thus, under the plain terms of R.C. 2945.37(B), the trial court should have held a competency hearing. Quite possibly, Mills's attorney would have been limited in what evidence of incompetency he could present at the hearing, given Mills's refusal to be transported for a competency examination. But if the issue of a defendant's competency is raised before trial, a competency hearing is mandatory. *Id.* And neither Mills's refusal to cooperate nor the failure of Mills's attorney to raise the issue after the initial motion excused the trial court from its duty to hold a competency hearing.

{¶ 14} But a court's failure to hold a mandatory competency hearing is not a basis for automatic reversal. *Bock*, 28 Ohio St.3d at 110, 502 N.E.2d 1016. Rather, "the failure to hold a mandatory competency hearing is harmless error where the record fails to reveal sufficient indicia of incompetency." *Id.*; *see also State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995), quoting *Bock* at 110 (the right to a competency hearing "rises to the level of a constitutional guarantee where the record contains 'sufficient indicia of incompetence,' such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial").

{¶ 15} We explained in *Bock* that incompetency is measured by the statutory criteria—the ability to understand the nature and objective of the proceedings and to assist in one's defense. *Id.* at 110. Thus, "[i]ncompetency must not be equated with mere mental or emotional instability or even with outright insanity." *Id.* Indeed, "[a] defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of

assisting his counsel." *Id.*

{¶ 16} In *Bock*, this court looked to the trial record and concluded that there was not sufficient indicia of incompetency to render prejudicial the court's failure to hold a hearing. *Id.* at 110-111. The court noted that defense counsel had asked for a competency hearing and explained that the defendant was in the hospital for drug problems. *Id.* at 110. Further, the record revealed "testimony by [the defendant] of his emotional distress and comments about suicide." *Id.* But we determined that such evidence did not amount to sufficient indicia of incompetency:

Defense counsel, after the original motion for a hearing, failed ever again to mention the defendant's competency until the time for appeal. The record reveals no adequate indication of any behavior on the part of the defendant which might indicate incompetency. Nor is there any expert or lay opinion in the record that defendant was actually incompetent. Furthermore, the defendant testified extensively at trial under direct, cross-, redirect and recross-examinations with no apparent behavior which would lead this court to believe that he was not competent to stand trial.

*Id.* at 111.

{¶ 17} Since *Bock*, we have continued to apply the sufficient-indicia-of-incompetency standard. *See, e.g.*, *State v. Were*, 94 Ohio St.3d 173, 175-176, 761 N.E.2d 591 (2002); *State v. Hough*, 169 Ohio St.3d 769, 2022-Ohio-4436, 207 N.E.3d 788, ¶ 28-37 (plurality opinion); *see also State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 64-69 (applying standard in context of a request made during trial); *Berry*, 72 Ohio St.3d at 359-362, 650 N.E.2d 433 (same). Mills asks us to reconsider this standard. He posits that an appellate court should be required to find that the failure to hold a competency hearing is reversible

error when the record reveals a "reasonable doubt" concerning the defendant's competency to stand trial. At the same time, he tells us that he is not asking us to abandon the sufficient-indicia-of-incompetency standard but instead to "better define" that standard by using "reasonable doubt" to "clarify what *quantity* of indicia is 'sufficient' to trigger reversal." (Emphasis added.)

{¶ 18} We decline to do so. The United States Supreme Court has opted not to "prescribe a general standard with respect to the nature or quantum of evidence necessary" to require a competency hearing as a constitutional matter. *Drope*, 420 U.S. at 172-173, 95 S.Ct. 896, 43 L.Ed.2d 103. And despite Mills's protestations to the contrary, what he asks is that we replace our existing standard with a different one. The sufficient-indicia-of-incompetency standard speaks to a quantum of evidence. It is a standard that we have fleshed out through reference to specific facts in our caselaw. *See, e.g.*, *Bock*, 28 Ohio St.3d at 110-111, 502 N.E.2d 1016; *Were* at 175-176. It requires an examination of the record as a whole to determine whether there is evidence that presents a reasonable question as to whether the defendant is incompetent.

{¶ 19} The beyond-a-reasonable-doubt standard is a standard of proof—one that is typically reserved for criminal trials. In its traditional context, it requires that the state overcome the presumption of innocence that criminal defendants enjoy by offering proof of guilt beyond a reasonable doubt. *See* R.C. 2901.05(A). Such a standard is a poor fit for the competency context where the presumption is reversed: a defendant is presumed competent to stand trial, R.C. 2945.37(G). Indeed, the United States Supreme Court has instructed that as a constitutional matter, "a State may presume that the defendant is competent and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence." *Cooper v. Oklahoma*, 517 U.S. 348, 355, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996).

{¶ 20} Given the different presumptions that apply to competency and

innocence, we decline Mills's invitation to graft the criminal proof-beyond-a-reasonable-doubt standard onto harmless-error review of a trial court's failure to hold a mandatory competency hearing. We adhere to our traditional standard: "[T]he failure to hold a mandatory competency hearing is harmless error where the record fails to reveal sufficient indicia of incompetency." *Bock* at 110.

### B. The Record Fails to Reveal Sufficient Indicia of Incompetency

{¶ 21} Having rejected Mills's attempt to change the legal standard, we turn to the court of appeals' determination that the record fails to reveal sufficient indicia of Mills's incompetency. At the outset, we clarify that we must consider "the totality of the evidence," including "both evidence of incompetency and evidence of competency," to determine whether the trial court's failure to hold a competency hearing was harmless. *Hough*, 169 Ohio St.3d 769, 2022-Ohio-4436, 207 N.E.3d 788, at ¶ 59 (Kennedy, J., dissenting), citing *Pate v. Robinson*, 383 U.S. 375, 378, 386, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). In doing so, we note that in *Hough*, a plurality of the court seemed to suggest that evidence of incompetency should be viewed in isolation, without consideration of the totality of the trial record. *See id.* at ¶ 31-36 (plurality opinion). But a plurality opinion is not controlling precedent. *See Hedrick v. Motorists Mut. Ins. Co.*, 22 Ohio St.3d 42, 44, 488 N.E.2d 840 (1986), *overruled on other grounds by Martin v. Midwestern Group Ins. Co.*, 70 Ohio St.3d 478, 639 N.E.2d 438 (1994), *superseded by statute as stated in Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 727 N.E.2d 1265 (2000); *Kraly v. Vannewkirk*, 69 Ohio St.3d 627, 633, 635 N.E.2d 323 (1994). And our caselaw has long established that a reviewing court must consider both evidence of competency and evidence of incompetency. *See Bock*, 28 Ohio St.3d at 110-111, 502 N.E.2d 1016; *Berry*, 72 Ohio St.3d at 362, 650 N.E.2d 433.

{¶ 22} Mills points to several instances that he suggests are indicia of his incompetency. He notes that on the day he was arraigned in this case, he was first sentenced in a separate case. During that sentencing, Mills stated that he felt

8

"bamboozled," "lost," and "railroaded" because he did not understand what was happening. The trial court then explained to Mills that he was simply being sentenced for a drug-possession offense to which he had previously pled guilty. Apparently satisfied with the judge's explanation, Mills said that he understood. The court asked him whether there was anything else he wanted to discuss, and Mills responded, "No, sir."

**{¶ 23}** As the court proceeded that day with the arraignment, Mills demonstrated no difficulty understanding the proceeding. When the court inquired about Mills's need for appointed counsel, Mills asked whether he could select an attorney from the appointed-counsel list. Mills also apologized to the court for his earlier outburst during sentencing in the drug-possession case.

**{¶ 24}** As further evidence of his purported incompetency, Mills points to the following statement he made during a September 4 pretrial hearing: "Your honor, seems like to me like he don't have time for me, Your Honor." Read in context, however, this statement simply reflected Mills's frustration with the fact that his attorney would be unavailable on the first two trial dates offered by the judge. There is nothing in the hearing transcript that indicates any inability of Mills to understand the nature of the proceeding or to communicate with his attorney. To the contrary, Mills's attorney began the hearing by explaining: "I will inform the Court I had time to sit down and review videos with my client and g[i]ve him picture printouts. He indicates to me he desires to go to trial as quickly as possible. I told him that can't be next week."

**{¶ 25}** Mills also points to a hearing that occurred on October 21, the date the case was initially set for trial. The trial court inquired about plea negotiations, and defense counsel stated: "I cannot assure the Court that I have effectively communicated the [state's plea] offer to him, given his adamant desire not to really discuss that with me." The state placed the plea offer on the record, and the trial court went over the offer in detail with Mills. During the judge's explanation of

the offer, Mills acknowledged on four separate occasions that he understood what the judge was explaining to him. As with the September 4 hearing, there is nothing in the hearing transcript that demonstrates any inability of Mills to understand the nature of the proceeding or to assist in his defense. Further, at a hearing that occurred two days later, Mills's attorney was able to inform the court: "I talked to my client. He rejected the plea at this time and wants the earliest possible trial date."

{¶ 26} Mills also points to a series of outbursts that occurred on November 4, when the court was forced to delay Mills's trial because of other cases on the court's docket. Mills told the court that it was violating his rights by not proceeding to trial more quickly. And at one point, Mills interjected, "Modern day slavery, man. That's all this is. Guilty till proven innocent instead of innocent until proven guilty." The transcript demonstrates that Mills was angry at the hearing— and difficult. But nothing in the transcript suggests that he didn't understand the nature of the hearing or that he lacked the capacity to assist his attorney. To the contrary, Mills demonstrated an acute—though imperfect—awareness of his speedy-trial rights, arguing to the court that the delay in bringing him to trial was "well over [his] 90 days * * * speedy trial" rights.

{¶ 27} Nor is there any indicia of incompetency in the record of the trial itself. Mills appears to have been quite capable of understanding legal concepts and of assisting in his defense. For example, the record indicates that Mills expressed discomfort with the racial composition of the initial jury panel and that his attorney raised that issue with the trial judge at an in-chambers conference in which Mills participated. The state later used one of its peremptory challenges to excuse an African-American juror, and Mills's counsel raised an objection under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in response. When the court overruled the objection, Mills stated: "This is racist."

10

{¶ 28} Ultimately, this case is quite similar to *Bock*, 28 Ohio St.3d 108, 502 N.E.2d 1016. As in *Bock*, after filing the initial request for a competency examination, defense counsel "failed ever again to mention the defendant's competency until the time for appeal," *id.* at 111. As in *Bock*, "[t]he record reveals no adequate indication of any behavior on the part of the defendant which might indicate incompetency," *id.* And as in *Bock*, there is no "expert or lay opinion in the record that defendant was actually incompetent," *id.* The only real distinction between this case and *Bock* is that the defendant in *Bock* testified at trial. *See id*. Here, we do not have any trial testimony by Mills to review, but we do have transcripts of the trial and multiple hearings at which Mills interacted with his attorney and with the court. Much like the defendant's testimony examined by the court in *Bock*, the proceedings in this case reveal "no apparent behavior which would lead this court to believe that [Mills] was not competent to stand trial," *id*.

{¶ 29} The record here is very different than the record in *Were*, 94 Ohio St.3d 173, 761 N.E.2d 591, a case in which we found that the record did present sufficient indicia of incompetency. Defense counsel in *Were* made four explicit requests for a competency hearing. *Id.* at 175. On multiple other occasions, counsel expressed to the trial court their belief that the defendant was incompetent. *Id.* For instance, one of the defendant's attorneys specifically told the court that based on his years of experience as a part-time referee in probate court handling civil commitments, he believed that the defendant was exhibiting signs of paranoia. *Id.* Further, the defendant's "own letters and statements to the court suggest[ed] that [his] paranoia centered on defense counsel," as evidenced by six pro se filings in which he attempted to have his attorneys dismissed based on his claims that they were "racially biased, had threatened his life, were conspiring with the prosecution, and had failed to adequately prepare for the mitigation phase." *Id.*

{¶ 30} In this case, the record demonstrates that Mills was frustrated with the pace of the proceedings and that at times he acted out on this frustration. But

nothing indicates that he was "incapable of understanding the nature and objective of the proceedings against [him] or of assisting in [his] defense," R.C. 2945.37(G).

{¶ 31} Indeed, much of the evidence that Mills points to actually demonstrates his understanding of the proceedings. Mills knew that a criminal defendant is presumed innocent until proven guilty. He recognized his right to appointed counsel. He knew that a *Batson* claim involves an allegation of racial discrimination. He knew that he had the right to a speedy trial. And he repeatedly told the trial judge that he understood what was being explained to him.

{¶ 32} The pretrial motion for a competency examination filed by Mills's attorney asserted that Mills had become difficult and uncooperative. But a lack of cooperation does not demonstrate an inability to cooperate. Mills's attorney represented to the trial court that he had been able to go over the state's evidence and the plea offer with Mills. And during multiple court appearances, Mills was able to articulate what his counsel had told him about the proceedings. For example, Mills expressed frustration that his counsel had told him that everyone would be ready for trial on October 21 and then told him that his trial date might be continued again. Further, counsel's competency motion came after Mills rejected the state's plea offer. Thus, Mills's unwillingness to further discuss a potential plea deal with his attorney was perfectly consistent with Mills's repeated insistence that he wanted to be tried as soon as possible.

{¶ 33} The record demonstrates that Mills was capable of "understanding the nature and objective of the proceedings against [him and] of assisting in [his] defense," R.C. 2945.37(G). Because the record lacks sufficient indicia of Mills's incompetency, the trial court's failure to hold a competency hearing constituted harmless error. We overrule Mills's first proposition of law.

### III. There Is No Need to Reach Mills's Second Proposition of Law

{¶ 34} We now turn to Mills's second proposition of law, which states: "A defendant cannot waive the issue of competency on a silent record." He contends

that "[t]he Sixth District held that [he] implicitly waived his right to a competency hearing by refusing to submit to an evaluation." But a review of the Sixth District's decision reveals that it was premised on that court's conclusion that the trial court's failure to hold a competency hearing constituted harmless error.[1] *See* 2022-Ohio-969 at ¶ 27.

**{¶ 35}** The court of appeals did briefly discuss waiver in its decision denying reconsideration, suggesting that the right to a competency hearing may be waived if the "defendant fails to maintain the competency issue in the record, and the record shows insufficient indication of any behavior on the part of the defendant which might indicate incompetency." 6th Dist. Lucas No. L-20-1084, at 6 (May 12, 2022). But the court also reiterated its determination that "any such failure [to hold a mandatory competency hearing was] harmless error under the entire record before [it]." *Id.* at 7. Because we agree with the Sixth District that the trial court's failure to hold a competency hearing was harmless error, it is unnecessary to reach Mills's second proposition of law.

### IV. Conclusion

**{¶ 36}** We adhere to our traditional standard that a trial court's error in failing to hold a mandatory competency hearing is harmless when the record, taken as a whole, fails to demonstrate sufficient indicia of incompetency. Having considered the record in this case, we find that it fails to reveal sufficient indicia of Mills's incompetency. Therefore, the trial court's error in failing to hold a competency hearing was harmless. We affirm the judgment of the Sixth District Court of Appeals.

---

1. Mills's merit brief also says that "the Sixth District cited caselaw from the Eighth District Court of Appeals that permits defendants to waive further competency proceedings affirmatively, on the record, and after some evidence suggests that further pursuit of the issue will be futile for the defendant." The brief then identifies three Eighth District cases. None of these cases, however, were cited by the Sixth District in its opinion. *See generally* 2022-Ohio-969. While we trust that counsel's misrepresentations were inadvertent, we caution counsel to be more careful in its representations to this court.

Judgment affirmed.

KENNEDY, C.J., and DETERS, J., concur.

FISCHER, J., concurs in judgment only, with an opinion.

DONNELLY, J., would dismiss the appeal as having been improvidently accepted because the court of appeals appropriately applied settled caselaw.

BRUNNER, J., dissents, with an opinion joined by STEWART, J.

_____

**FISCHER, J., concurring in judgment only.**

### Introduction

{¶ 37} A defendant's right to a hearing on the issue of his competency to stand trial rises to the level of a constitutional guarantee only when there is sufficient doubt regarding his competence. *See Pate v. Robinson*, 383 U.S. 375, 387, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). Therefore, although a defendant has the right to a competency hearing under Ohio law on request, R.C. 2945.37(B), a trial court's failure to hold a competency hearing is harmless error unless there are sufficient indicia of incompetency in the record, *State v. Bock*, 28 Ohio St.3d 108, 111, 502 N.E.2d 1016 (1986). This has been the harmless-error standard for reviewing a trial court's failure to holding a competency hearing since 1986, when *Bock* was decided. This court reaffirmed it as the standard in 2022 in *State v. Hough*, 169 Ohio St.3d 769, 2022-Ohio-4436, 207 N.E.3d 788, ¶ 12, 31, and it continues to be the standard today.

### *State v. Hough*

{¶ 38} In my view, the sufficient-indicia-of-incompetency standard does not even need to be reiterated in this case, because just last year, in *Hough*, we held that "the standard set forth in *Bock* is proper and sufficiently protects a defendant's right not to be tried when incompetent," *id.* at ¶ 28 (plurality opinion); *see also id.* at ¶ 45 (Fischer, J., concurring in part and dissenting in part). Furthermore, I

disagree with the lead opinion because I do not take *Hough* to suggest that evidence of a defendant's competency cannot be considered when determining whether it was harmless error for a court to not hold a competency hearing. This court's decision in *Bock is clear that* evidence of competency can, and should, be considered. *See id.* at 111 (noting that the defendant testified extensively at trial while exhibiting no behavior indicating incompetency). Rather, I take the statement in *Hough—that the question under Bock is not whether there are any indicia of competency but rather whether there are sufficient indicia of incompetency, Hough at ¶ 31 (plurality opinion)—as* an acknowledgment that the indicia of competency in that case were outweighed by the indicia of incompetency.

{¶ 39} In *Hough*, a psychiatric evaluation revealed that the defendant had been unable to state the day of the week, the date, the month, or the year, and that he held several delusional beliefs such as that other people could control his thoughts. *Id.* at ¶ 8. The defendant's psychiatric doctor noted that the defendant was having auditory hallucinations and was responding to internal stimuli. *Id.* Further, cognitive tests indicated that the defendant had a full-scale IQ of 59, equivalent to that of a person with an intellectual disability. *Id.* at ¶ 33-34.

{¶ 40} Therefore, in *Hough*, we held that the trial court's failure to hold a competency hearing on request was not harmless error, because the record included sufficient indicia of the defendant's incompetence. 169 Ohio St.3d 769, 2022-Ohio-4436, 207 N.E.3d 788, at ¶ 30-33, 37 (plurality opinion), ¶ 45 (Fischer, J., concurring in part and dissenting in part). However, this case is not *Hough*.

**Mills**

{¶ 41} The facts of this case do not rise to the level of those in *Hough*. There are not sufficient indicia of Mills's incompetence in this case, because the record demonstrates that Mills had the capacity to understand the nature and object of the proceedings against him, to consult with his counsel, and to assist in preparing his

defense. *See Drope*, 420 U.S. at 171, 95 S.Ct. 896, 43 L.Ed.2d 103; R.C. 2945.37(G).

{¶ 42} Mills understood the nature and object of the proceedings against him. On October 21, 2019, he expressed three separate times that he understood the charges against him and the sentencing possibilities. He also asked the trial court whether he could choose his counsel from the appointed-counsel list and indicated multiple times that he wanted a jury trial as soon as possible. Then, consistent with those wishes, he expressed frustration when the court delayed his trial date. Also, Mills clearly remembered what had occurred during his previous court appearances. For example, on October 21, Mills explained to the court that he was sentenced to community control in an earlier case. On November 4, Mills stated that in August or early September, his trial date was set for some time in October, and he remembered that he had agreed to continue his October trial date so that he could consider the state's plea offer. Mills's comments about being subjected to "modern day slavery," being presumed "guilty until proven innocent," and having been "bamboozled" or "railroaded" indicate that he was dissatisfied with the trial process but do not indicate that he was incompetent.

{¶ 43} Mills was also able to consult with his counsel and assist in preparing his defense. While Mills had issues with his counsel at times, he clearly had the *ability* to consult with his counsel. During multiple court appearances, Mills was able to articulate what his counsel had told him about the proceedings. For example, Mills expressed frustration that his counsel had told him that everyone would be ready for trial on October 21 and then told him that his trial date might be continued again. Further, when the trial court denied defense counsel's objection during voir dire under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), Mills said, "This is racist," indicating that he understood the nature of the objection. Mills further demonstrated his understanding of the proceedings and his ability to assist in his defense when he stated that he had read about his speedy-

16

trial rights and knew the state had only 90 days to bring him to trial, *see* R.C. 2945.71(C)(2) and (E).

{¶ 44} Moreover, defense counsel's assertion in Mills's motion for a competency assessment that Mills became verbally abusive whenever he did not agree with counsel's position on a legal issue merely demonstrates that Mills was dissatisfied with his counsel. Counsel indicated that Mills was unable to have a reasoned discussion regarding the state's plea offers, but that apparent refusal by Mills was consistent with his position, which he expressed many times, that he wanted to go to trial as quickly as possible.

{¶ 45} As the state points out, disagreeing with counsel is not necessarily indicative of incompetence. In *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, this court weighed a defendant's refusal to heed his counsel's advice against his responses to the trial court's questions in which he expressed his understanding of the nature of the charges against him and the possible penalties for the charges, and we rejected the defendant's argument that the trial court had abused its discretion in denying his request for a competency evaluation. *Id.* at ¶ 161-162. Similarly, in this case, Mills indicated that he understood the nature of the charges against him and the possible penalties for the charges.

### Conclusion

{¶ 46} As the Sixth District Court of Appeals held below, there is evidence in the record that Mills was combative, but there is not sufficient evidence that he was incompetent. *See* 2022-Ohio-969, ¶ 22-24. Therefore, the trial court's failure to hold a competency hearing was harmless error.

———————————

**BRUNNER, J., dissenting.**

{¶ 47} "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the

proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). Ohio protects that right, in part, through a statute providing that when the issue of the competency of a defendant in a criminal case is raised before trial, "the court *shall* hold a hearing on the issue." (Emphasis added.) R.C. 2945.37(B). We have held, however, and the lead opinion reiterates today, that a trial court's failure to hold a competency hearing under R.C. 2945.37(B) is harmless error unless there is "*sufficient* indicia of incompetency * * * in the record," (emphasis added) *State v. Bock*, 28 Ohio St.3d 108, 111, 502 N.E.2d 1016 (1986). This dissent questions the propriety of reviewing courts' continuing to decide what exactly is "sufficient indicia of incompetency" without applying a clear standard such as the reasonable-doubt standard. This dissent also questions whether reviewing courts may properly find harmless error when a trial court failed to hold a statutorily required competency hearing and there are indicia of the defendant's incompetency in the record including defense counsel's statements claiming that the defendant was unable to engage in a coherent conversation.

{¶ 48} The lead opinion has declined to answer the question of just what amounts to sufficient indicia of incompetency under *Bock*. *See id.* at 111. In doing so, it permits any judge in this state who is considering a person's competency to stand trial to rely on his or her personal and undisclosed view of what amounts to sufficient indicia of incompetency when making what amounts to a clinical psychiatric or psychological judgment about the person's competency. And in this case, the lead opinion ignores the clear evidence of incompetency that was provided by appellant Miguel Mills's counsel, including counsel's assertion that Mills was "unable to have a coherent conversation concerning the evidence against him, [or] any type of trial tactic available." Ignoring this evidence in the record, the lead opinion determines that the trial court's failure to conduct a competency hearing

18

was harmless error.

{¶ 49} R.C. 2945.37(B) is black and white—if the issue of a defendant's competency is raised before trial, a hearing must be held. Through *Bock* and the lead opinion's application of it today, this court smudges the lines between the black and white to unnecessarily create shades of gray. And the lead opinion applies *Bock* so as to sanction the blurring of R.C. 2945.37(B)'s clear lines, justifying its doing so as being necessary to determine whether the trial court's failure to conduct a competency hearing was harmless error. But this case is not a child's coloring book; rather, it asks questions concerning personal liberty, the substantial rights of an individual, and the guarantees of a fair criminal-justice system in our state's communities.

{¶ 50} The crux of this case is this: Mills's counsel stated, within three weeks of trial, that Mills "[was] unable to have a coherent conversation concerning the evidence against him, [or] any type of trial tactic available." Had Mills been given a competency hearing and ordered to undergo a competency evaluation, a key determination by an expert evaluator would have been whether Mills was "coherent" enough to assist in his own defense. *See, e.g.*, *State v. Roberts*, 137 Ohio St.3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, ¶ 90 ("After interviewing [the defendant], [the psychologist] concluded that [the defendant] had the ability to interact with defense counsel and to provide information and a *coherent* account of her own perceptions about the situation to her counsel" [emphasis added]).

{¶ 51} The concept of competency to face trial envisions that the defendant is coherent. By its very definition, being coherent means being rational, integrated, logical, and understandable and having clarity, consistency, and intelligibility. *See Merriam-Webster Dictionary Online*, https://www.merriam-webster.com/dictionary/coherent (accessed Aug. 14, 2023) [https://perma.cc/7L58-VY6W]. Here, a competency hearing was required under R.C. 2945.37(B), because Mills's lack of coherency was an indication of his incompetency. Were

Mills's competency formally evaluated and a report of the evaluation reviewed by the trial court as part of a competency hearing, and were the report to have concluded that Mills was malingering, the court would know of that conclusion. If Mills were determined to need treatment to be restored to competency, however, the court would know that conclusion and Mills and the public could be assured of a fair trial following his restoration to competency. But today, the lead opinion continues to encourage courts to make uneducated, not-clinically-supported guesses on issues such as whether a defendant in a criminal case whose counsel questions whether the defendant can engage in a "coherent conversation" is competent to stand trial. This court and any other court of review should refrain from shoring up an abject failure by a trial court to hold a competency hearing by excusing the failure as harmless error,[2] especially when Ohio law *requires* a hearing. *See* R.C. 2945.37(B). Because I conclude that the trial court's failure to hold a competency hearing was not harmless error, I respectfully dissent.

### I. Clarifying the Bock standard

{¶ 52} In his first proposition of law, Mills asks this court to clarify the "sufficient indicia of incompetency" standard established in *Bock*, 28 Ohio St.3d at 111, 502 N.E.2d. 1016. It is easy to understand why he would request this, since determining whether certain evidence is "sufficient" for a purpose needs a clear standard, a touchstone, a bar. Certainly, there are clinically relevant trigger words that should cause trial- and appellate-court judges, regardless of their own

---

2. The harmless-error rule appears to have been born from concerns about judicial efficiency and the promotion of public respect for the criminal process. *See United States v. Hasting*, 461 U.S. 499, 509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Ohio's version of the rule is contained in Crim.R. 52(A), which provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Alarmingly, the harmless-error rule has the potential to be applied in criminal cases as a de facto game of chance of predicting how an appellate court will rule on the question whether there was a clear error, defect, irregularity, or variance during the trial-court proceedings and whether the defendant would have been found guilty absent the error, defect, irregularity, or variance.

experiences or opinions, to conclude that a defendant's competency must be evaluated and a hearing held on the matter. In this case, the trigger word was "coherent," which was used by Mills's counsel. This is not a difficult call to make, considering that word's definition and how a defendant's competency is essential to the defendant's assisting in his or her own defense.

{¶ 53} Disappointingly, the lead opinion expressly declines to step up to the plate and take a crack at helping courts and counsel understand what amounts to sufficient indicia of incompetency to trigger a hearing under R.C. 2945.37(B) and an evaluation under R.C. 2945.371(A). Its reason seems to be that the standard set forth in *Bock* is simply good enough as it is and that any clarification of that standard for appellate-review purposes would somehow be inconsistent with the role of an appellate court.

{¶ 54} But *this* court is not just any appellate court. All other courts established by the Ohio Constitution are referred to in the Constitution as "courts inferior to the Supreme Court," Ohio Constitution, Article IV, Section 1, and are guided by this court's decisions upon "review and final determination" in certified-conflict cases, *id.* at Section 3(B)(4), and other types of cases that come before the court, *id.* at Section 2(B)(2). We should assist this state's inferior courts by showing them how to "get it right," to ensure that there is less error at the trial level and on appellate review, which will result in greater fairness for all. Having not undertaken that task, today's lead opinion would allow every appellate (and trial) judge to be free to decide what amounts to sufficient indicia of incompetency based on the judge's personal, undisclosed standard. And that, in turn, means that defendants and their counsel will not have a practical understanding of what evidence is sufficient, either at the trial level or in the record on appeal, to overcome the presumption of competency.

{¶ 55} One cannot deny that society is everchanging. Although Ohio judges may receive antibias training as part of their continuing education, *see* Court

News Ohio, *Anti-Bias Training Part of Judicial College's Present and Past* (July 31, 2020), https://www.courtnewsohio.gov/happening/2020/antiBiasTraining_073120.asp (accessed Sept. 6, 2023) [https://perma.cc/P567-ALFM], no single judge can fully understand the clinical manifestations of mental illness that might affect a defendant's competency to stand trial, particularly given that a defendant may have or be of a wholly different familial and experiential background, upbringing, education, class, race, gender, nationality, sexual orientation, gender identity, age, or intelligence level than the judge. The same may be said regarding counsel's assurances that his or her client is competent.[3] Judges and attorneys must abide by the expectation of objectivity imposed on them in this state, which requires a judge or attorney considering the question of a defendant's competency to make an arm's-length determination based on the advisement or testimony of an expert witness and not on what could be perceived as the judge's or attorney's conjecture, guesses, or senses. *See* Supreme Court of Ohio Commission on Professionalism, *Professional Ideals for Ohio Lawyers and Judges* 4 (Apr. 2023) (providing that a lawyer shall aspire to "[m]aintain the sympathetic detachment that permits objective and independent advice to clients" and that a judge "must not only be fair but also give the appearance of being fair"), available at https://www.supremecourt.ohio.gov/docs/Publications/AttySvcs/proIdeals.pdf (accessed Aug. 14, 2023) [https://perma.cc/C3GS-Y25L]. In declining to clarify the standard established in *Bock*, 28 Ohio St.3d 108, 502 N.E.2d 1016, the lead opinion tacitly determines that the standard may be whatever a judge wants it to be.

{¶ 56} I would hold that when there is a reasonable doubt as to whether the

---

3. In a recent capital case, I criticized the majority opinion for concluding that a competency evaluation was not required for a defendant whose "experienced attorney—by self-proclamation—ha[d] adjudged his client to be competent based on counsel's stated ability to recognize mental illness, even when that client may not [have] outwardly demonstrate[d] visible symptoms of mental illness to nonclinical laypersons during the limited time they interact[ed]." *State v. Lawson*, 165 Ohio St.3d 445, 2021-Ohio-3566, 179 N.E.3d 1216, ¶ 214 (Brunner, J., dissenting).

defendant was competent to stand trial, the presumption of competency is rebutted and the matter must be remanded to the trial court for it to conduct the mandatory competency hearing under R.C. 2945.37(B) and to consider a formal competency evaluation.

{¶ 57} Applying a reasonable-doubt standard when determining whether a trial court's failure to hold a competency hearing was harmless error balances the risk of error in not holding a competency hearing versus that of holding such a hearing. *See Cooper v. Oklahoma*, 517 U.S. 348, 362-363, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996), quoting *Cruzan v. Dir., Missouri Dept. of Health*, 497 U.S. 261, 283, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990) ("The 'more stringent the burden of proof a party must bear [when attempting to rebut the presumption of competency], the more that party bears the risk of an erroneous decision' "); *see also Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) ("the function of legal process is to minimize the risk of erroneous decisions"). Using a reasonable-doubt standard for this competency inquiry also makes sense because, by definition, the harmless-error rule is applied in that context only when the defendant, for whatever reason, has already been deprived of the opportunity to gather and present evidence of his or her incompetency at a hearing required by R.C. 2945.37(B). In that situation, the record on appeal will inherently lack reliable information about the defendant's competency or lack thereof at the time of trial and conviction. *See State v. Lawson*, 165 Ohio St.3d 445, 2021-Ohio-3566, 179 N.E.3d 1216, ¶ 212 (Brunner, J., dissenting) ("the 'sufficient indicia of incompetency' method falls short, because it is based on gleaning information from a record when often no record was made").

{¶ 58} The task of determining whether a competency hearing should be held—or whether the failure to hold a hearing was harmless error—can be particularly difficult when the defendant has mental-health issues. The rate of severe mental illness—such as major affective disorders or schizophrenia—is

higher in jails and prisons than in the general population. *See* Collier, *Incarceration Nation*, 45 Monitor on Psychol. 56 (Oct. 2014), available at https://www.apa.org/monitor/2014/10/incarceration (accessed Aug. 14, 2023) [https://perma.cc/Y8Y6-4EQH]. "[A]bout 10 percent to 25 percent of [United States] prisoners suffer from serious mental illnesses," while the average rate for such illnesses in the general population in the United States is only about 5 percent. *Id.*

{¶ 59} Judges and attorneys rarely have the training or experience necessary to identify severe mental illness and its manifestations without input from a mental-health professional. The Revised Code recognizes this truth, permitting a trial court to order a psychological evaluation of the defendant, *see* R.C. 2945.371(A), requiring the trial court to hold a competency hearing when the issue is raised, *see* R.C. 2945.37(B), and permitting the evaluation results and other evidence concerning the defendant's competency to be presented at such a hearing. Unfortunately, continuing to apply the standardless harmless-error rule from *Bock*, 28 Ohio St.3d 108, 502 N.E.2d 1016, as the lead opinion does today, promotes the opposite of what R.C. 2945.37(B) requires. By allowing judges to apply essentially whatever standard they envision is appropriate when determining whether a defendant has successfully rebutted the presumption of competency (by a showing of sufficient indicia of incompetency), the very purpose of R.C. 2945.37(B), which is to protect the right to a fair trial, may be subverted.

{¶ 60} A better approach, which aligns with Mills's first proposition of law, is to require application of a reasonable-doubt standard. The reasonable-doubt standard is a commonly applied rule in criminal procedure. Using it in the context of deciding whether the failure to hold a R.C. 2945.37(B) competency hearing was harmless error would foster greater consistency, predictability, and fairness in Ohio criminal cases in which the defendant's competency is placed at issue. This would be a small step toward addressing the concerns raised by compelling psychological

research, which has shown that the rate of mental illness for prisoners is greater than that for the general population. *See* Collier, 45 Monitor on Psychol. at 56.

*II. The lead opinion's application of the* Bock *standard*

{¶ 61} Applying the *Bock* standard here, it is clear that the record contains sufficient indicia of Mills's incompetency so as to preclude a finding that the trial court's failure to conduct a competency hearing was harmless error. *See id.* at 110-111. As noted above, the question of a defendant's competency is not simply whether the defendant understands what is going on around him or her. An equally essential part of the competency question concerns whether the defendant has the ability to consult with and assist his or her counsel for the purpose of preparing a defense. *See Drope*, 420 U.S. at 171, 95 S.Ct. 896, 43 L.Ed.2d 103.

{¶ 62} In considering this issue, it is important to acknowledge that unlike evidence concerning a defendant's ability to understand the trial-court proceedings, evidence of a defendant's ability to assist his or her counsel is not nearly as likely to be contained in a transcript of the proceedings. The work of preparing a defense is done primarily outside of court, in private between the defendant and his or her counsel. As a result, if anyone is able to offer evidence that a defendant is unable to assist in the preparation of his or her defense, it is most likely the defendant's counsel. For that reason, statements by defense counsel about the defendant's ability to assist in preparing a defense are significant.

{¶ 63} After working with and representing Mills for several months, Mills's counsel concluded that his mental condition had declined to the point at which he was unable to assist in his own defense. Counsel therefore filed in the trial court a motion seeking a competency evaluation for Mills, as contemplated under R.C. 2945.371(A). Among other things, counsel informed the court of the following:

> 1. *Mr. Mills' mental stability since being in pre-trial*

*detention on his charges has continued in a downward spiral. Where counsel was once able to have a "somewhat" reasonable conversation concerning the evidence against him that has completely evaporated.*

*2. Mr. Mills is unable to have a coherent conversation concerning the evidence against him, any type of trial tactic available* or a calm reasoned discussion concerning the plea offer from the State and the risk of plea verses [sic] trial.

3. The last three visits with Mr. Mills have resulted in him becoming so verbally violent and physically telegraphing potential violence it has caused upwards to three or four Corrections Officers to respond to the meeting room.

4. This occurs with any comments by counsel that isn't in complete agreement with what his predetermined position is on even the smallest issues concerning the proceeding in court or his defense.

(Emphasis added.) For some judges, the intimation of an accused's anger, such as that which Mills's counsel described, may evince the accused's lack of acceptance of responsibility for his or her actions or lack of respect for the court. The former interpretation reflects the judge's loss of objectivity for the presumed innocence of the accused unless and until he or she is proved guilty. The latter reflects an ignorance of how a person may manifest mental illness; e.g., a person may manifest depression through acute anger.[4]

---

4. *See* Fava & Rosenbaum, *Anger Attacks in Patients with Depression*, 60 J.Clinical Psychiatry 21 (Supp. 15: 1999), available at https://www.psychiatrist.com/read-pdf/793/ (accessed Aug. 14, 2023) [https://perma.cc/SQ4L-GTH8]. This study explained:

{¶ 64} Mills's counsel's statements are clear and direct evidence that Mills's abilities to consult with his counsel and assist in his defense were substantially impaired, and that evidence was presented by the person in the best—and perhaps only—position to know. Defense counsel told the trial court that Mills was unable to have a *coherent* conversation concerning the evidence against him, and the timing and context in which counsel used the word "coherent" amounted to ample evidence in the record to establish reasonable doubt as to whether Mills was competent to stand trial, thus requiring the trial court to conduct a competency hearing under R.C. 2945.37(B) and permitting a formal competency evaluation under R.C. 2945.371(A). Because evidence in the record creates reasonable doubt as to whether Mills was competent, the sufficient-indicia-of-incompetency standard under *Bock*, 28 Ohio St.3d at 111, 502 N.E.2d 1016, was met and the trial court's failure to hold a competency hearing under R.C. 2945.37(B) was not harmless error.

{¶ 65} Even as the lead opinion chooses to continue to apply *Bock* without connecting it to any standard for determining whether there are sufficient indicia of incompetency, it ignores the clear indicia of Mills's incompetency in the record within Mills's counsel's statements. In particular, the lead opinion does not address

---

Anger attacks are sudden intense spells of anger that resemble panic attacks but lack the predominant affects of fear and anxiety associated with panic attacks. They typically occur in situations in which an individual feels emotionally trapped and experiences outbursts of anger that are later described by the patient as being uncharacteristic and inappropriate to the situation at hand. Anger attacks consist of both behavioral and autonomic features, and various criteria and an Anger Attacks Questionnaire have been designed to identify the presence of these attacks. The prevalence of anger attacks in depressed patients is approximately 30% to 40%, and the attacks have disappeared in 53% to 71% of depressed patients treated with fluoxetine, sertraline, or imipramine. This article discusses the development of the concept of anger attacks, the presence of anger attacks in depression and other psychiatric disorders, and the current treatment of anger attacks.

*Id.*

defense counsel's assertion that "Mills [was] unable to have a coherent conversation concerning the evidence against him, [or] any type of trial tactic available." Nor does the lead opinion address defense counsel's assertions that Mills's "mental stability" had "continued in a downward spiral" and that his ability to have a " 'somewhat' reasonable conversation concerning the evidence against him" had "completely evaporated." There is no good reason for the lead opinion to ignore these statements. If being "unable to have a coherent conversation concerning the evidence" and any "trial tactic[s]" does not register as sufficient indicia of incompetency, then it is difficult to imagine what would. By ignoring these statements, the lead opinion sets a dangerous example for the lower courts.

{¶ 66} The lead opinion ultimately concludes that there are not sufficient indicia of Mills's incompetency in the record—a conclusion that is perhaps unsurprising in light of its decision to ignore material evidence to the contrary. In support of that decision, the lead opinion points to "multiple court appearances" in which, in its words, "Mills was able to articulate what his counsel had told him about the proceedings," lead opinion, ¶ 32. And it notes that Mills had "expressed frustration" regarding his counsel's advisements as to when his trial would likely begin and that Mills had indicated that he understood his speedy-trial rights. *Id.* at ¶ 32. It also observes that Mills indicated that he understood the nature of an objection that his counsel made during voir dire. There are several problems with this reasoning.

{¶ 67} None of the evidence on which the lead opinion relies supports its position, because none of the evidence is informative of Mills's ability to *assist his counsel with his defense*. At most, it reflects Mills's understanding of statements he had heard. And to the extent that any statements by Mills *do* indicate some ability of his to assist his counsel, they are not dispositive of this case. It is well established that "the question under *Bock*[, 28 Ohio St.3d 108, 502 N.E.2d 1016,] is not whether there are any indicia of *competency*. The question is whether there

are sufficient indicia of *incompetency*." (Emphasis sic.) *State v. Hough*, 169 Ohio St.3d 769, 2022-Ohio-4436, 207 N.E.3d 788, ¶ 31 (lead opinion).

{¶ 68} In addition, the lead opinion does not take into account that all but one of the statements by Mills on which it relies to conclude that there are not sufficient indicia of Mills's incompetency in the record were made before or during the November 4, 2019, hearing, which was *before* his counsel filed the motion for a competency evaluation on November 19, 2019. That matters because Mills's counsel explained in the motion that Mills's mental stability had been *declining* in the months leading up to the motion. It was only around November 19 that defense counsel concluded that Mills's mental stability had "completely evaporated" and that he was "unable to have a coherent conversation concerning the evidence" and "trial tactic[s]." The only evidence from *after* November 19 on which the lead opinion relies is Mills's December 9 statement during voir dire expressing his opinion that the trial court's rejection of his counsel's objection was "racist." That lone statement, however, simply is not evidence that Mills was able to assist his counsel in preparing his defense during the time immediately before trial.

{¶ 69} In the end, defense counsel's assertions concerning Mills's competency in the motion for a competency evaluation should be more than enough to preclude a finding of harmless error here.

### III. Waiver or forfeiture

{¶ 70} The lead opinion's conclusion that the failure to hold a competency hearing was harmless error leads it to decline to address the issue raised in Mills's second proposition of law: whether he waived or forfeited his right to challenge the trial court's failure to hold a competency hearing by refusing to be transported from the jail to the location of the evaluation. I would hold that Mills's refusal to be transported did not constitute a waiver or a forfeiture of his right to raise the competency issue on appeal.

{¶ 71} The state argues that Mills's refusal should be viewed as either an

implicit waiver or a forfeiture of the right to challenge on appeal the trial court's failure to hold a competency hearing. Like the court of appeals below, the state points to the fact that Mills refused to be transported to the location of the psychological evaluation, which it contends violated his duty to cooperate in the competency-determination process established, in its view, by R.C. 2945.371(C)(1) and (D)(2). *See* 2022-Ohio-969 at ¶ 17. The state also points to conduct by Mills following his refusal that it contends indicates he was competent and to the fact that defense counsel did not raise any concerns about Mills's competency during trial.

{¶ 72} Again, it appears that the state and the court of appeals have lost their way on objectivity's path, substituting their own values and experiences in place of the informed and objective analyses necessary to ensure a fair trial. And, ironically, the state's waiver argument necessarily depends on Mills's having been competent when he engaged in the conduct to which the state points to support its argument. "[W]aiver is the 'intentional relinquishment or abandonment of a known right.' " *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In some circumstances, a defendant's waiver of rights may be inferred from the defendant's behavior. *See, e.g.*, *State v. Murphy*, 91 Ohio St.3d 516, 518-519, 747 N.E.2d 765 (2001) (observing that a trial court may infer a defendant's waiver of Fifth Amendment rights from the defendant's behavior). But whether a waiver is made expressly, through a statement, or implicitly, through conduct, the issue is ultimately the same: "[W]hether the defendant in fact knowingly and voluntarily waived" the right. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). Thus, "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Pate v. Robinson*, 383 U.S. 375, 384, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

{¶ 73} Here, based on the concerns raised by Mills's counsel regarding his

30

competency, it is simply not clear whether Mills was competent during the period immediately before trial and during trial. Notably, although a refusal to comply with a psychological evaluation could be a knowing and intelligent decision, it could also be a manifestation of mental illness. The state essentially conceded this point at oral argument. And while proof that a defendant suffers from mental illness does not automatically establish the defendant's incompetency, *Bock*, 28 Ohio St.3d at 110, 502 N.E.2d 1016, mental illness can cause incompetency in certain cases, *Drope*, 420 U.S. at 181-182, 95 S.Ct. 896, 43 L.Ed.2d 103. As a result, the state's waiver argument fails.

{¶ 74} The result here is no different if the question is one concerning forfeiture of the argument. "[F]orfeiture is the failure to make the timely assertion of a right." *Olano* at 733, citing *Zerbst* at 464. Mills's counsel raised clear concerns regarding Mills's competency in his motion for a competency evaluation. In my view, that was sufficient to preserve for appeal any argument concerning the competency hearing sought by that motion. The state cites no authority for the proposition that Mills or his counsel needed to object again to preserve those arguments.

*IV. Conclusion*

{¶ 75} The trial court's failure to hold a competency hearing was not harmless error, and the harmless-error rule should not be applied to the deprivation of a substantial right—here, the right to a fair trial, which guarantees that a defendant shall not be tried unless the defendant is competent and able to assist defense counsel in his or her defense—in a standardless manner. I would therefore reverse the judgment of the Sixth District Court of Appeals and clarify that *Bock* calls for application of a reasonable-doubt standard with respect to reviewing a trial court's failure to hold a competency hearing under R.C. 2945.37(B), thereby eliminating the standardless use of the harmless-error rule in that context. Because the lead opinion does not and for the reasons stated above, I respectfully dissent.

31

STEWART, J., concurs in the foregoing opinion.

———————————

Julia R. Bates, Lucas County Prosecuting Attorney, and Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Kimberly E. Burroughs, Assistant Public Defender, for appellant.

Steven L. Taylor, urging affirmance for amicus curiae, Ohio Prosecuting Attorneys Association.

———————————